# UNITED STATES DISTRICT COURT

for the

Northern District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 5:23-MJ-433 (ML)
(1) BLACK, LG MOBILE PHONE AND (2) WHITE )
APPLE IPHONE WITH A RED CASE, IN THE )
CUSTODY OF ATF, LOCATED AT 100 S. CLINTON )
ST., SYRACUSE, NY )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

(1) BLACK, LG MOBILE PHONE AND (2) WHITE APPLE IPHONE WITH A RED CASE, IN THE CUSTODY OF ATF, LOCATED AT 100 S. CLINTON ST., SYRACUSE, NY, DESCRIBED FURTHER IN ATTACHMENTS A-1 AND A-2

located in the _____Northern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) | Possession of firearm by felon |
| 21 U.S.C. § 841(a) | Possession with intent to distribute narcotics |
| 18 U.S.C. § 933 | Firearm trafficking |
| 18 U.S.C. § 922(a)(5) | Transfer firearm to out-of-state resident |

The application is based on these facts:

See attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Richard R. Gardinier*

*Applicant's signature*

Richard R. Gardinier, Special Agent (ATF)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: _____08/04/2023_____

*Miroslav Lovric*

*Judge's signature*

City and state: _____Binghamton, NY_____

Hon. Miroslav Lovric, U.S. Magistrate Judge

*Printed name and title*

| Print | Save As... | Attach | Reset |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A BLACK, LG MOBILE PHONE AND A WHITE APPLE IPHONE WITH A RED CASE, IN THE CUSTODY OF THE SYRACUSE ATF, LOCATED AT 100 S. CLINTON STREET, SYRACUSE, NEW YORK | Case No. **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Richard Gardinier, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January 2, 2017. My office is located in Syracuse, New York. I attended the Federal Law Enforcement Training Center (FLETC), located in Glynco, Georgia, where I was enrolled in and successfully completed both Criminal Investigator Training Program (CITP) and Special Agent Basic Training (SABT). During the course of my training, I received instruction on physical surveillance, interviewing sources of information and defendants, reviewing telephone and financial records, applying for and serving search warrants, firearms trafficking, etc. Prior to my time with ATF, I was employed by the United States Secret Service, Uniformed Division (USSS/UD) for four years. I was enrolled in and successfully completed the Uniformed Police Training Program (UPTP) at FLETC, as well as New Officer Training with the USSS/UD, located in Beltsville, Maryland.

2.       I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States

who is empowered by law to conduct investigations of and make arrests for the offenses enumerated in Title 18, 21 and 26, United States Code. As an ATF Special Agent, I am authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, and Title 26 offenses, related to the unlawful possession and/or transfer of firearms.

3.      I make this affidavit in support of an application for a search warrant for the following devices (collectively, the "Subject Devices"):

a.   One black LG mobile device, seized during a traffic stop by the Syracuse Police Department (SPD) (Subject Device 1, described further in Attachment A-1).

b.   One white Apple iPhone with red case, seized during a traffic stop by the Syracuse Police Department (SPD) (Subject Device 2, described further in Attachment A-2).

4.      The devices are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Syracuse Field Office, located at 100 S. Clinton Street, room 509, Syracuse, New York. Located within the Subject Devices, I seek to seize evidence of criminal violations, as more particularly described in Attachment B.

5.      The statements contained in this affidavit are based on my personal observations, my training and experience, my review of law enforcement reports, and information provided to me by other law enforcement officers involved in this investigation. Because this affidavit is being submitted for the limited purpose of seeking search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence may be found on the Subject Devices of violations violating Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a previously convicted felon); Title 21, United States Code, Section 841(a)(1) (possession and/or distribution of controlled substances); Title 18, United States Code, Section 922(a)(5) (Transfer of

2

a firearm to an out-of-state resident); and Title 18, United States Code, Section 933 (trafficking in firearms) (collectively, "the Subject Offenses"). There is also probable cause to search the property described in Attachments A-1 and A-2 for evidence of these crimes, as described in Attachment B.

## FACTS SUPPORTING PROBABLE CAUSE

### A.    Recovery of Firearms and Ammunition During Traffic Stop (July 25, 2023)

6.    On July 25, 2023, while on routine patrol in a marked Syracuse Police Department ("SPD") vehicle, SPD officers observed a grey Ford Flex bearing New York State registration KWV5178 ("Subject Vehicle") traveling on North Salina Street in Syracuse, New York. SPD Officers noted the vehicle had dark tinted windows and a dark license plate cover, in violation of New York State Vehicle and Traffic Law. SPD officers conducted a traffic stop of the Subject Vehicle in the 1100 block of North Salina Street, Syracuse, New York.

7.    Upon approaching the vehicle, officers contacted Willie Carter (driver), Jermel Moore (right rear passenger) and Delmetri Turner (front passenger) inside the Subject Vehicle. While speaking to Moore at the window of the Subject Vehicle, officers observed what appeared to be a high-capacity ammunition magazine containing ammunition inside his waistband. Officers then removed Moore, Turner, and Carter from the vehicle and began an investigation.

8.    Moore, Turner, and Carter each reside in Syracuse, New York.

9.    After removing Moore from the Subject Vehicle, officers removed the magazine from Moore's pocket and placed it on the roof of the Subject Vehicle. The magazine was found to be loaded with rounds of .22 caliber ammunition.

10.    Officers recovered the following items, among other things, during the traffic stop:

a.    Approximately 3.8 grams of a beige chunky substance which field tested positive for cocaine from Moore's underwear area;

3

b.      $3,490.00 in US currency banded with a rubber band, located on Moore's person;

c.      A Ruger, model 10/22, .22 caliber rifle bearing serial number 124-11147, located in front of the back seat directly in front of where Moore was sitting;

d.      In the rear seat area of the Subject Vehicle, a black bag containing a black plastic container, inside of which were 4 empty pistol magazines, 2 boxes of 9mm ammunition, a Smith and Wesson, model SD9VE, 9mm caliber pistol bearing FBF6715 with empty magazine, a Beretta, 9mm caliber pistol bearing serial number A148035X with empty magazine, 2 pistol grips, gun-cleaning supplies, a gun lock, and a magazine loader;

e.      In the rear seat area, a red backpack which contained a Glock, model 43, 9mm caliber pistol bearing serial number AHLR763, a body armor vest, two .22 caliber extended magazines, and a lockbox containing 1 clear knotted plastic baggie containing a tan chunky substance and one containing a white chunky substance, a black mobile device (Subject Device 1) and white Apple iPhone with red case (Subject Device 2).

11.     A firearms trace of the aforementioned firearms was conducted. The firearms trace summary indicated that the Glock, Beretta, and Smith & Wesson firearms were purchased earlier that same day (July 25, 2023) in Steubenville, Ohio by Timothy Grimes. ATF agents spoke with Grimes on August 1, 2023.  During the conversation, Grimes incorrectly recalled the make of the firearms he purchased and similarly did not know the model or caliber of the pistols he purchased on July 25.  Further, Grimes stated that he had possession of the firearms until approximately 9pm the day of purchase.  Grimes later reported the firearms stolen to the Steubenville Police

Department on or about July 26, 2023 at approximately 5pm. Based on my training and experience, and the facts described above, including the extremely brief period the firearms were in the initial purchaser's possession, their subsequent location in a vehicle with previously convicted persons, and the purchaser's lack of knowledge of the firearms that he himself purchased, I believe that Grimes was a straw purchaser of firearms, and that he purchased the firearms on behalf of others, rather than himself.

12.     I have examined the descriptions of the firearms, as well as the traces as described above. Based on that examination, and my training and experience, including specific training in determining the origin of firearms, I have determined that each was manufactured outside the state of New York.

13.     Based on my training and experience, the training and experience of other law enforcement agents, and my knowledge of the investigation, including the substantial amounts of cash in the Subject Vehicle, and the quantity and packaging of the controlled substances found during the traffic stop, I believe that the controlled substances were intended for distribution to others, rather than for personal use.

### B.     Criminal Histories of Subject Vehicle Occupants

14.     A review of Carter's criminal history revealed 4 previous felony convictions:

a.     On or about April 22, 2014, Carter was sentenced in Onondaga County Court to 3 years' imprisonment as a result of his conviction for attempted burglary 2nd degree, a felony.

b.     On or about April 22, 2014, Carter was sentenced in Onondaga County Court to 4 years' imprisonment as a result of his conviction for criminal possession of a controlled substance in the 3rd degree (narcotic drug intent to sell), a felony.

5

  c. On or about January 16, 2007, Carter was sentenced in Onondaga County Court to 42 months' imprisonment as a result of his conviction for attempted criminal possession of a controlled substance in the 3rd degree (narcotic drug intent to sell)

  d. On or about January 13, 2004, Carter was sentenced in Onondaga County Court to 1 year imprisonment in Onondaga County Court as a result of his conviction for criminal possession of a controlled substance in the 3rd degree (narcotic drug intent to sell).

15. A review of Moore's criminal history revealed 1 previous felony conviction. On or about May 9, 2011, Moore was sentenced in Onondaga County Court to 5 years' imprisonment as a result of his conviction for Criminal Possession of a Weapon in the 2nd Degree (loaded firearm), a felony. Moore was convicted in Onondaga County, Northern District, New York on May 09, 2011.

16. A review of Turner's criminal history revealed 4 previous felony convictions:

  a. On or about December 20, 2004, Turner was sentenced in Onondaga County Court to 6 to 12 years' imprisonment as a result of his conviction for criminal sale controlled substance in the 3rd degree, a felony.

  b. On or about December 20, 2004, Turner was sentenced in Onondaga County Court to 6 to 12 years' imprisonment as a result of another conviction for criminal sale controlled substance in the 3rd degree, a felony. This sentence was ordered to run concurrent to the sentence in the previous paragraph.

  c. On or about February 24, 1998, Turner was sentenced in Onondaga County Court to 27 to 54 months' imprisonment as a result of his conviction for

burglary in the 2nd degree, a felony.

d.      On or about June 28, 1996, Turner was sentenced in Onondaga County Court to 1 year imprisonment as a result of his conviction of attempted robbery in the 3rd degree, a felony.

17.     The Subject Devices were seized by the SPD and placed into evidence. On August 1, 2023, Subject Device 1 and Subject Device 2 were transferred to SA Gardinier, where they were placed into evidence at the ATF Syracuse Field Office, located at 100 South Clinton Street, room 509, Syracuse, New York.

**C.      The Subject Devices**

18.     Based on the facts discussed above, including the facts that another individual, Grimes, purchased the firearms in Ohio earlier the same day that they were found in the Subject Vehicle in New York in the possession of Carter, Moore and Turner, the packaging of the controlled substances found, the presence of substantial amounts of cash in the Subject Vehicle, and based on my training and experience described further below, I believe there is probable cause a search of the Subject Devices will reveal additional evidence relating to the Subject Offenses.

19.     I know, based upon my training and experience, that individuals involved in narcotics-distribution and firearms-trafficking offenses often use their cellular telephones and other electronic devices to facilitate and discuss their activities with others involved in the offenses. From my training, experience, and discussions with other experienced investigators, I know it is common for individuals plotting a crime, such as illegal possession and distribution of both firearms and narcotics, to use their phones and electronic devices both to communicate with other individuals participating in the offense, locate targets or implements of the planned crime, and to maintain records related to their activities, including but not limited to, the following:

7

    a.    Co-conspirator contact information and communications.

    b.    Records of travel relating to their activities.

    c.    Records related to the receipt, transfer, deposit and expenditure of income and other proceeds from the planned crimes, such as a sale of firearms and/or narcotics.

    d.    Contact with potential purchasers (including straw purchasers of firearms) of firearms and/or narcotics.

    e.    Photographs of narcotics, firearms, and cash proceeds.

20.     Based on my training, experience, and research, I know that the Subject Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence which reveals or suggests who possessed or used a device and uses to which it has been put. For example, the Subject Devices are likely to contain location information which could indicate whether the Subject Devices were in the area where the firearms were purchased in Steubenville, Ohio, and could provide information about locations associated with co-conspirators, and where the firearms were transferred.

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

22.     There is probable cause to believe the things which were once stored on the Subject Devices may still be stored there, for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

9

d.     Similarly, files which have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

23.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices was used, the purpose of their use, who used them, and when. There is probable cause to believe this forensic electronic evidence might be on the Subject Devices because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

10

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## NATURE OF EXAMINATION

24.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Subject Device 1 and Subject Device 2, consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether there is evidence described by the warrant.

25.     Because the Subject Devices are already in law-enforcement custody, I request authorization to conduct a search of the Subject Devices at any time of day or night. An

11

examination at any time of day or night would pose no greater burden or inconvenience to the users of the Subject Devices.

## **CONCLUSION**

26.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the property described in Attachment A to seek the items described in Attachment B.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

*Richard R. Gardinier*
Richard R. Gardinier
ATF Special Agent

I, the Hon. Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on August  4  , 2023, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

*Miroslav Lovric*
Hon. Miroslav Lovric
United States Magistrate Judge

12

## <u>ATTACHMENT A-1</u>

**Property to Be Searched**

One black LG mobile device pictured below, which is currently housed at the offices of

the Bureau of Alcohol, Tobacco, Firearms and Explosives Syracuse Field Office, located at 100

S. Clinton Street, room 509, Syracuse, New York.

 

## <u>ATTACHMENT A-2</u>

### Property to Be Searched

One white Apple iPhone with a red case, pictured below, which is currently housed at the offices of the Bureau of Alcohol, Tobacco, Firearms and Explosives Syracuse Field Office, located at 100 S. Clinton Street, room 509, Syracuse, New York.




**ATTACHMENT B**

**Items To Be Seized**

1.      Information that constitutes evidence of violations of Title 18, United States Code,
Section 922(g)(1) (possession of a firearm to a previously convicted felon); Title 21, United States
Code, Section 841(a)(1) (possession and/or distribution of controlled substances); Title 18, United
States Code, Section 922(a)(5) (Transfer of a firearm to an out of state resident); and Title 18,
United States Code, Section 933 (trafficking in firearms):

      a.    Text messages, instant messages, chat room messages, emails, voice mail
messages, and/or other communications relating to any purchase or transfer
of firearms or controlled substances;

      b.    Records regarding any calls made or received;

      c.    Contact lists;

      d.    Any photographs or audio recordings that relate to the purchase and/or
transfer of either firearms or controlled substances;

      e.    Geolocation, mapping, GPS records, and metadata containing information
related to the location history of the Subject Devices;

      f.    Records of, or information about, any Internet activity including firewall
logs, caches, browser history and cookies, "bookmarked" or "favorite" web
pages, search terms that the user entered into any Internet search engine,
and records of user-typed web addresses; and

      g.    Information related to the receipt or transfer of money.

2.      Evidence of user attribution showing who used or owned the Subject Devices at the
time the things described in this affidavit were created, edited or deleted, such as logs, phonebooks,

saved usernames and passwords, documents and browsing history to include internet activity, firewall logs, cashes, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-type web addresses.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.